OPINION OF THE COURT
 

 Smith, J.
 

 The issue before this Court is whether a finding of neglect as to a newborn and the newborn’s older sibling may be based solely on the newborn’s positive toxicology for a controlled substance. We conclude that more than a positive toxicology is generally required for a neglect determination. We affirm in this case because, as the Appellate Division concluded, there is additional evidence in the record supporting the Family Court’s findings of neglect.
 

 Appellant gave birth to her son Dante in November 1990. Both mother and son tested positive for cocaine. After learning of the positive toxicologies, the Nassau County Department of Social Services (DSS) brought a petition pursuant to section 1022 of the Family Court Act to temporarily remove Dante from appellant’s care. Family Court conducted a hearing on the removal petition on November 21, 1990.
 

 At the hearing, DSS presented evidence that Dante was born with a positive toxicology for cocaine and a low birth weight. DSS also presented evidence that appellant had a history of
 
 *77
 
 cocaine abuse, had been admitted to several drug rehabilitation centers, and that appellant’s mother had custody of two of appellant’s children because appellant’s drug use rendered her incapable of caring for them. Appellant’s mother informed DSS that she had observed appellant high on cocaine in the last weeks of appellant’s pregnancy with Dante. Appellant told DSS that she smoked a cigarette at a Halloween party at the end of her pregnancy which may have contained cocaine.
 

 Appellant did not present any witnesses at the removal hearing, but argued that DSS had failed to sustain its burden of proof because no toxicology report or witnesses to recent drug abuse had been produced. Appellant’s counsel also argued that appellant had not admitted to recent, intentional, drug use. Family Court dismissed the petition and directed the hospital to release Dante to appellant’s custody. That removal proceeding is not before us.
 

 DSS subsequently brought this consolidated child protective proceeding against appellant on behalf of Dante, appellant’s son, and Dantia (born in 1987), appellant’s daughter. At the fact-finding hearing, DSS introduced into evidence two medical reports showing a positive toxicology for cocaine from Dante and positive toxicology for cocaine and opiates from appellant. DSS also presented evidence of appellant’s prior history of drug abuse and appellant’s admission that she may have smoked a cigarette containing cocaine, while she was pregnant with Dante, at a Halloween party.
 

 Appellant presented two experts who testified that appellant provided a clean, well-ordered environment for her children, that appellant interacted appropriately with her children and that four random urine samples taken from appellant tested negative for controlled substances. The experts opined that appellant had not been a regular user of controlled substances since the latter half of the 1980’s. The experts also testified that appellant was voluntarily receiving counseling at a general education and support program run by the Family Service Association. Appellant did not testify at the fact-finding hearing.
 

 Dante’s medical records reveal a primary diagnosis of prematurity, even though they also indicate 38-39 weeks of gestation, with a low birth weight (4 pounds, 14 ounces) for his gestation period. Dante remained in the Neonatal Intensive Care Unit for the duration of his stay at the Nassau County Medical Center. He was released to the custody of his mother on November 21, 1990, after the Family Court refused to order removal.
 

 
 *78
 
 The medical records also contain a note from the medical center’s social worker documenting a phone call from appellant’s aunt at the beginning of November, before Dante’s birth, alerting the social worker to appellant’s drug use and expressing concern about Dante’s health. The records further contain a discharge assessment form indicating a discharge diagnosis of prematurity and advising follow-up care in the high-risk clinic.
 
 *
 

 Family Court found that Dante’s positive toxicology for cocaine constituted sufficient evidence for a finding of neglect as to Dante and Dantia. The Family Court further found that a presentment agency need not produce any evidence for a finding of neglect other than a positive toxicology for a controlled substance in the newborn. Appellant was permitted to retain custody of Dante and Dantia and placed under the supervision of DSS for a one-year period. The Appellate Division affirmed, relying on additional evidence in the record for its factual findings of neglect.
 

 Section 1012 (f) (i) (B) of the Family Court Act defines a "neglected child” as a child less than 18 years of age "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired” because of a parent’s failure to exercise a minimum degree of care "by misusing a drug or drugs.” Thus, the statute sets forth two predicates for a finding of neglect: actual physical, emotional or mental impairment, or the imminent danger of such impairment.
 

 Although physical impairment is not defined by statute, section 1012 (h) of the Family Court Act defines "impairment of emotional health” and "impairment of mental or emotional condition” as "a state of substantially diminished psychological or intellectual functioning in relation to, but not limited to, such factors as failure to thrive, control of aggressive or self-destructive impulses, ability to think and reason, or acting out or misbehavior”. The Practice Commentaries to section 1012 use that statutory definition as a model to define "impairment of a physical condition” and arrive at the following formulation: "a state of substantially diminished physical growth, freedom from disease, and physical functioning in relation to, but not limited to, fine and gross motor development and organic brain development” (Besharov, Practice Commentary,
 
 *79
 
 McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1012, at 239).
 

 The imminent danger standard is not specifically defined by statute, but clearly reflects the judgment of the Legislature that a finding of neglect may be appropriate even when a child has not been actually impaired, in order to protect that child and prevent impairment. Consequently, the imminent danger of impairment to a child is an independent and separate ground on which a neglect finding may be based.
 

 A report which shows only a positive toxicology for a controlled substance generally does not in and of itself prove that a child has been physically, mentally or emotionally impaired, or is in imminent danger of being impaired. Relying solely on a positive toxicology result for a neglect determination fails to make the necessary causative connection to all the surrounding circumstances that may or may not produce impairment or imminent risk of impairment in the newborn child. The Family Court thus erred in concluding that Dante’s positive toxicology alone was sufficient for the findings of neglect. A positive toxicology report, however, in conjunction with other evidence, may support a neglect finding. Even though here, the trial court did not make any findings linking the positive toxicology to physical impairment, the record contains other evidence which supports the findings of neglect on the ground that appellant’s children were placed in imminent danger of impairment by appellant’s drug use, and justifies the limited DSS intervention which was ordered.
 

 Dante was born prematurely, with low birth weight and a positive toxicology for cocaine. Dante required a specialized level of care and spent his entire hospital stay in the Neonatal Intensive Care Unit. After discharge from the hospital, Dante required a high degree of follow-up care at the high-risk clinic. Appellant had a history of being unable to care for her children because of her drug use and was observed high on cocaine during the end of her pregnancy with Dante. Although two experts opined that appellant had not regularly used drugs since the second half of the 1980’s, appellant’s mother and aunt stated that appellant had been high during the end of her pregnancy with Dante.
 

 A trier of fact may draw the strongest inference that the opposing evidence permits against a witness who fails to testify in a civil proceeding
 
 (Matter of Commissioner of Social Servs. [Patricia A.] v Philip De G.,
 
 59 NY2d 137, 141). Appellant did not testify at the fact-finding hearing. Consequently, it may be
 
 *80
 
 inferred that appellant knowingly used cocaine during her pregnancy. Appellant’s use of cocaine during her pregnancy, considered in conjunction with her prior, demonstrated inability to adequately care for her children while misusing drugs provided a sufficient basis to conclude, at the least, that Dante was in imminent danger of impairment
 
 (see,
 
 Family Ct Act § 1046 [a] [ii]). Moreover, that same evidence indicated a substantial impairment of judgment leading to a conclusion of neglect
 
 (see,
 
 Family Ct Act § 1046 [a] [iii]).
 

 Appellant’s conduct and lack of judgment created an imminent danger of impairment as to Dantia, who was under appellant’s care during that time period. Proof of neglect as to one child is admissible on the issue of neglect as to another
 
 (see,
 
 Family Ct Act § 1046 [a] [i]). Appellant’s neglect of Dante could be considered in determining whether appellant neglected Dantia. Consequently, the Appellate Division had sufficient grounds to sustain the neglect findings as to Dante and Dantia.
 

 The fact that appellant had a series of negative toxicology tests subsequent to Dante’s birth, and that social workers testified at the fact-finding hearing that appellant was currently providing a good home were relevant in this proceeding to the disposition, and not to whether appellant previously neglected the children by her acts or omissions. It should be emphasized that there is no issue here of the removal of either Dante or Dantia from the care of appellant. Nevertheless, the record supported the need to insure the adequacy of care provided to both children. The limited supervision ordered by the Family Court achieved this goal with an appropriate level of State intervention.
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
 

 Order affirmed, without costs.
 

 *
 

 [4] Expert testimony would be particularly helpful in cases such as these, where medical records must be interpreted, especially when a question exists as to whether a newborn exhibited drug withdrawal symptoms after birth.